S11G0274. KENNEDY DEVELOPMENT COMPANY, INC.
v. CAMP et al.

(719 SE2d 442)

HUNSTEIN, Chief Justice.

We granted certiorari to examine whether the "anti-indemnity" statute found at OCGA § 13-8-2 (b) applies to invalidate an indemnification clause within an assignment and assumption agreement transferring responsibility for the management and operation of a newly developed subdivision to its homeowners' association. See *Newton's Crest Homeowners' Assn. v. Camp*, 306 Ga. App. 207 (702 SE2d 41) (2010). We now hold that OCGA § 13-8-2 (b) does apply to the assignment and assumption agreement, and, therefore, we affirm.

The undisputed evidence establishes that appellees Donald, Brenda, and Donnie Camp own twelve acres of rural property in Gwinnett County located adjacent to Hunter's Pond, a subdivision named for the lake around which it is situated. Northwest and upstream of the Hunter's Pond subdivision is another subdivision, Newton's Crest, which was developed beginning in 2001 by appellant Kennedy Development Company, Inc. Prior to Kennedy's purchase of the land for Newton's Crest, the previous owner of the land, Tycor, Inc., had entered into various agreements with the Hunter's Pond Homeowners' Association whereby Hunter's Pond agreed to permit the future Newton's Crest subdivision to use its lake as its detention pond in exchange for Tycor's promise to make certain repairs and improvements to the pond and to maintain the pond on an ongoing basis. In connection with Kennedy's purchase of the land for Newton's Crest, Tycor assigned to Kennedy all its rights and responsibilities under the detention facility agreements.

According to the Camps, while excess stormwater from Hunter's Pond has historically drained into a creek on the Camps' property, the amount and velocity of the runoff has significantly increased since the development of Newton's Crest began, resulting in erosion, tree loss, and other damage to the Camps' property. In 2006, allegedly following various unsuccessful attempts to remedy the problems themselves and through the City of Snellville, the Camps sued Kennedy for negligence, nuisance, and continuing trespass in its development of Newton's Crest and its upgrading and maintenance of the detention pond.

Meanwhile, once development of Newton's Crest was completed, in April 2007 Kennedy entered into an Assignment and Assumption Agreement ("Assignment Agreement") with appellee Newton's Crest Homeowners' Association ("NCHA") whereby, inter alia, the NCHA assumed responsibility for the operation, maintenance, and repair of Newton's Crest. As part of the Assignment Agreement, the

NCHA assumed Kennedy's rights and responsibilities under the detention facility agreements. Also included in the Assignment Agreement was an indemnification provision providing as follows:

> In material consideration of Kennedy's other obligations as set forth herein, the [NCHA] agrees to indemnify, defend, and hold Kennedy harmless for and from any debts, claims, actions, damages, judgments or costs, including reasonable attorneys fees incurred in defending against any and all such debts, claims, actions, damages, judgments or costs incurred which arose prior to the date of this Agreement and are related to the construction, maintenance, repair, or operation of Newton's Crest Subdivision or are in any way related to the Declaration [of Covenants, Conditions, Restrictions and Easements for Newton's Crest Subdivision] or the Detention Facility Agreements. [NCHA] shall further indemnify, defend and hold Kennedy harmless for and from any debts, claims, actions, damages, judgments or costs, including reasonable attorneys fees incurred in defending against any and all such debts, claims, actions, damages, judgments or costs which arose or were incurred on or subsequent to the date of this Agreement.

Relying on this indemnification provision, Kennedy filed a third-party complaint against the NCHA, alleging that the NCHA was obligated to hold harmless and indemnify Kennedy with respect to the Camps' claims.[1]

Both Kennedy and the NCHA moved for summary judgment, Kennedy as to the Camps' claims against it, and the NCHA as to the third-party complaint. The trial court denied both motions, but granted a certificate of immediate review. The Court of Appeals, while affirming the denial of summary judgment as to the Camps' claims against Kennedy, reversed as to the NCHA's motion, finding that the indemnification clause was invalid under OCGA § 13-8-2 (b) and thus eliminating any basis for the NCHA's liability. We granted certiorari to review the enforceability of the indemnification clause. Our review of this question of statutory construction is de novo. *City of Atlanta v. Hotels.com*, 289 Ga. 323 (1) (710 SE2d 766) (2011).

OCGA § 13-8-2 (b), as it read at the time the Assignment

---

[1] Kennedy's third-party complaint also named as third-party defendants Tycor, as well as two other parties involved in the development of a third subdivision upstream of both Newton's Crest and Hunter's Pond, which Kennedy claims caused or contributed to the stormwater runoff problems of which the Camps complain.

Agreement was entered into,[2] provided as follows:

> A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable, provided that this subsection shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer.

Id. Thus, in order to fall within the ambit of the statute, an indemnification provision must (1) relate in some way to a contract for "construction, alteration, repair, or maintenance" of certain property and (2) promise to indemnify a party for damages arising from that own party's sole negligence.

With respect to the first of these threshold conditions, Georgia courts have consistently construed this statute more broadly than courts in other jurisdictions have construed analogous statutes. See Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner and O'Connor on Construction Law*, § 10.81, n. 5 (June 2011) (citing Georgia as example of jurisdiction construing anti-indemnity statute broadly to include real property leases). *Federal Paper Bd. Co. v. Harbert-Yeargin, Inc.*, 53 FSupp.2d 1361, 1370 (N.D. Ga. 1999) (noting Georgia courts' "expansive interpretation" of anti-indemnity statute). Indeed, in addition to its application to more traditional construction contracts, see, e.g., *Lanier at McEver, L.P. v. Planners & Engineers Collaborative, Inc.*, 284 Ga. 204 (2) (663 SE2d 240) (2008) (statute applies to contract between developer and civil engineers for design of storm-water drainage system for apartment complex); *Federated Dept. Stores v. Superior Drywall & Acoustical, Inc.*, 264 Ga. App. 857 (1) (592 SE2d 485) (2003) (statute applies to contract between construction contractor and drywall subcontractor), the statute has been applied to commercial and residential lease agreements bearing little or no relationship to any ostensible building

---

[2] See *Davis v. Parris*, 289 Ga. 201 (1) (710 SE2d 757) (2011) (contract must be construed under law in effect at time contract is made). While the statute was amended in 2007, the amendments do not materially affect our analysis here. See Ga. L. 2007, p. 208, § 1.

construction. See, e.g., *May Dept. Store v. Center Developers, Inc.*, 266 Ga. 806 (1) (471 SE2d 194) (1996) (applying statute to commercial lease); *Country Club Apartments, Inc. v. Scott*, 246 Ga. 443 (271 SE2d 841) (1980) (statute applies to residential lease agreement); *Terrace Shopping Center Joint Venture v. Oxford Group, Inc.*, 192 Ga. App. 346 (384 SE2d 679) (1989) (statute applies to management agreement between commercial property owner and property manager); *National Candy Wholesalers, Inc. v. Chipurnoi, Inc.*, 180 Ga. App. 664 (350 SE2d 303) (1986) (statute applies to lease of booth space at trade show); *Big Canoe Corp. v. Moore & Groover, Inc.*, 171 Ga. App. 654 (1) (320 SE2d 564) (1984) (statute applies to property maintenance and rental agreement).

Within this context, the Assignment Agreement clearly falls within the first threshold condition of the anti-indemnity statute. Though the Assignment Agreement does not itself set forth terms of a construction project, it is a vehicle through which existing rights and responsibilities vis-à-vis past construction have been assigned and assumed.[3] Specifically, the Assignment Agreement transfers responsibility for the maintenance and repair of a residential subdivision, the development of which Kennedy oversaw, as well as for the maintenance and repair of the subdivision's detention facility, the excavation and reconstruction of which Kennedy also oversaw. The agreement therefore qualifies as one related to "construction, alteration, repair, or maintenance" within the scope of OCGA § 13-8-2 (b).

As to the second threshold condition, requiring that the provision purport to indemnify the indemnitee for its sole negligence, our precedent is clear that this condition is satisfied by language like that in the Assignment Agreement, to the effect that a party will indemnify and hold harmless the other party as to "any" or "all" claims, damages, losses, injuries, or the like arising from the subject of the parties' contractual relationship, "no matter the origin of the claim or who is at fault." See *Lanier*, supra, 284 Ga. at 206-207 (2). Accord *Frazer v. City of Albany*, 245 Ga. 399, 402 (2) (265 SE2d 581) (1980) (indemnity provisions in lease agreement referring to "all claims" and "any loss or damage to property, or any injury to or death of any person" construed to apply to indemnitee's sole

---

[3] While Kennedy asserts, without authority, that the statute applies only to contracts that contemplate *future* construction and thus does not apply to this contract regarding *completed* construction, the language of the statute does not include such a temporal limitation, nor have our courts construed it in this manner. See, e.g., *Lanier*, supra, 284 Ga. at 206 (1) (purpose of statute is to prevent avoidance of liability resulting from contractor's or owner's sole negligence " 'whether during the construction of the building or after the structure is completed and occupied' "); *Big Canoe Corp.*, supra, 171 Ga. App. at 657 (1) (applying statute where contract apparently was signed after construction alleged to have caused injuries at issue).

negligence, and provisions therefore held void). Accordingly, the Assignment Agreement satisfies both conditions upon which application of the anti-indemnity statute depends, and the indemnification provision is thus rendered invalid.

As to Kennedy's final argument that the indemnification provision is severable and that some of its provisions may survive, we note that this contention, even if correct, bears no consequence in this case. Given that the Camps' lawsuit was filed prior to the execution of the Assignment Agreement — indeed, prior to the NCHA's existence as a corporate entity — the claims therein obviously arose prior to that time, and thus the potential survival of that portion of the indemnification clause applying to claims arising after execution of the agreement would be of no benefit to Kennedy in this case.

For the foregoing reasons, we hold that the indemnification provision is invalid, and, to the extent that Kennedy's third-party claims against the NCHA are premised on this invalid provision, the Court of Appeals correctly held that summary judgment should have been granted to the NCHA.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2011 —
RECONSIDERATION DENIED DECEMBER 8, 2011.

*Hicks, Casey & Foster, Lisa K. Whitfield*, for appellant.

*Gregg P. Counts, Larry E. Stewart, Downey & Cleveland, Russell B. Davis, Joshua S. Ruplin, Carlock, Copeland & Stair, David F. Root, Brian, Cave, Powell & Goldstein, C. Scott Greene*, for appellee.